## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

CASE NO.: 16-24818-CIV-MARTINEZ-GOODMAN

JAMIE BRYANT, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

WAL-MART STORES, INC.,

      Defendant.

_____/

## WAL-MART STORES, INC.'S MOTION TO DISMISS
## AND INCORPORATED MEMORANDUM OF LAW

MARK F. BIDEAU, ESQ.
Florida Bar No. 564044
GREENBERG TRAURIG, P.A.
777 S. Flagler Drive, Suite 300 East
West Palm Beach, FL  33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222
E-Mail:bideaum@gtlaw.com
FLService@gtlaw.com

HILARIE BASS, ESQ.
Florida Bar No. 334323
ELIZABETH COPPOLECCHIA, ESQ.
Florida Bar No. 86747
GREENBERG TRAURIG, P.A.
333 Avenue of the Americas
(333 S.E. 2nd Avenue)
Suite 4400
Miami, FL  33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
E-Mail: bassh@gtlaw.com

PAUL J. ONDRASIK, JR.
*Pro Hac Vice* Motion Pending
ERIC G. SERRON
*Pro Hac Vice* Motion Pending
OSVALDO VAZQUEZ
Florida Bar No. 0070995
LAURA LANE-STEELE
*Pro Hac Vice* Motion Pending
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., N.W.
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
E-Mail: pondrasik@steptoe.com

*Counsel for Defendant Wal-Mart Stores, Inc.*

CASE NO.: 16-24818-CIV-MARTINEZ-GOODMAN

Defendant Wal-Mart Stores, Inc. ("Wal-Mart") hereby seeks dismissal of Plaintiff Jamie Bryant's Complaint pursuant to Rule 12(b)(1), Fed. R. Civ. P., because Plaintiff lacks Article III standing to pursue her claim either on her own behalf or on behalf of the putative class, and as a result, this Court lacks subject matter jurisdiction over this action. Alternatively, Wal-Mart seeks dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P., because Plaintiff fails to state a claim on which relief can be granted.

## INTRODUCTION

In this purported class action, Plaintiff alleges that Defendant Wal-Mart violated Section 606(a)(4) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1166(a)(4), by failing to provide her sufficient notice of her right to elect continued health insurance coverage under Wal-Mart's medical plan pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). By way of relief, she seeks, among other things, statutory penalties in the amount of $110 per day for herself and the class she purports to represent as well as declaratory and injunctive relief regarding the alleged violation.

Plaintiff's claim is "much ado about nothing," for she has alleged no harm to herself whatsoever from Wal-Mart's alleged violation. She does not allege that she failed to receive written notice of her right to elect COBRA continuation coverage or to do so within the statutorily prescribed period. She does not allege that she failed to understand the notice that she admittedly received or that the notice in any way impacted her decision to forego continued coverage. Nor does she suggest that, but for the notice, she would have elected COBRA coverage or that she is otherwise without medical insurance (or paying more for alternative coverage) because of the Defendant's alleged violation. Rather, identifying a number of

2

purported technical defects in the notice – none of which affected her – she contends simply that the notice was "deficient" and that she is entitled to monetary penalties as a result.

Plaintiff's effort to parlay the notice's alleged deficiencies into a "penalty pay-day" cannot withstand scrutiny.[1]  As a threshold matter, Plaintiff's Complaint suffers from a fatal defect that requires its dismissal under Rule 12(b)(1) – she does not allege that she personally suffered any harm, much less a "concrete injury," as a result of the allegedly "deficient" notice at issue.  For this reason, she lacks constitutional standing under Article III to pursue her claim and this Court lacks subject matter jurisdiction.  *Spokeo v. Robins*, 136 S. Ct. 1540 (2016).  Nor could Plaintiff allege the requisite injury because the notice she received, on its face, satisfies the legal requirements she cites.  The notice's satisfaction of those requirements provides an independent basis for dismissal under Rule 12(b)(6).  Because the notice is a central document attached to the Complaint, "[w]here there is a conflict between allegations in [the] pleading and the central document[], it is 'well settled' that the contents of the document[] control."  *Trinidad & Tobago Unit Trust Corp. v. CB Richard Ellis, Inc.*, 280 F.R.D. 676, 677-78 (S.D. Fla. 2012) (Martinez, D.J.).  Here, the notice's contents belie the Complaint's allegations that the notice fails to comply with the relevant regulations.

In any event, Wal-Mart is not a proper defendant in this action.  As Plaintiff acknowledges, ERISA § 606(a)(4) imposes the obligation to provide a COBRA notice on the "administrator" of a group health plan.  Compl. ¶ 10.  Likewise, the penalty she seeks to recover

---

[1] Plaintiff's counsel filed a nearly identical complaint in this Court on behalf of a different named plaintiff, but it was voluntarily dismissed.  *See Reed v. Walmart Stores, Inc.*, No. 9:16-cv-81864-DMM (S.D. Fla. Nov. 15, 2016).  Plaintiff's counsel also filed a third, nearly identical complaint in the Middle District of Florida, challenging a notice provided by BB&T.  *See Sefchick v. Branch Banking & Trust Co.*, No: 8:16-cv-03303-CEH-AAS (M.D. Fla. Dec. 1, 2016).

under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1) can be assessed only against the plan "administrator" of the Wal-Mart plan.  Compl. ¶ 15.  Although Wal-Mart is the plan sponsor of the benefit plan here involved, the governing plan documents make clear that Wal-Mart is *not* the plan administrator that has the COBRA notice obligation or faces this potential penalty liability. This Court should therefore dismiss the Complaint in its entirety.

## BACKGROUND

Jamie Bryant is a former Wal-Mart employee who participated in the company's health plan – the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan ("Plan").  Compl. ¶ 6; *id.* App'x B.[2]  After her April 8, 2016 termination, Bryant received a notice informing her of her ability to continue her insurance coverage ("the COBRA Notice").[3]  Compl. ¶ 6; *id.* App'x B. The COBRA Notice, attached to the Complaint, is a nine-page communication, consisting of a letter, election notice, and addendum titled "Important Information About Your COBRA Continuation Coverage."  *Id.* App'x B.  The latter refers participants with questions to CONEXIS, the Plan's COBRA Administrator, and to the Associate Benefits Book.  The Associate Benefits Book, which is the Plan's ERISA-required Summary Plan Description as well as part of the Plan's governing documents, itself provides seven additional pages of explanation regarding continuation coverage.  *See id.* at 10; *see also* 2016 Associate Benefits Book at 107-13, *currently available at* https://us.walmartone.com/en/Health/Associate-Toolkit/2016/Documents /2147511532/Associate-Benefits-Book-2016.aspx.

---

[2] For purposes of this Motion, Wal-Mart has accepted the factual allegations as true, except to the extent that they are contrary to the governing plan document.

[3] This notice of "continuation coverage" is required under ERISA, as amended by COBRA.  *See* 29 U.S.C. § 1166(a)(4).

Bryant, on behalf of herself and similarly situated employees, sued claiming that the COBRA Notice did not fully comply with the Department of Labor's Model Notice or the regulation prescribing what must be included in COBRA notices, 29 C.F.R. § 2590.606-4. Compl. ¶ 16.  Her Complaint cites six purported deficiencies, alleging that the COBRA Notice: a) was not written in a manner calculated to be understood; b) failed to provide contact information for the Plan Administrator; c) failed to explain that a spouse could elect continuation coverage; d) failed to explain that a legal guardian could elect continuation coverage; e) failed to explain that a decision whether to elect continuation coverage would affect a qualified beneficiary's future rights; and f) did not include a reference to where a qualified beneficiary could obtain additional information.  *Id.*  The Complaint does not allege that Plaintiff failed to understand the COBRA Notice, or that these purported deficiencies in any way applied to her personal circumstances, much less impacted her decision to forego COBRA coverage.  Instead, it simply alleges she was "unable to obtain continuation coverage after receiving the deficient election notice," without providing any explanation regarding her alleged inability.  Compl. ¶ 21.

## LEGAL STANDARD

Plaintiff bears the burden of establishing that she has standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (every plaintiff must have Article III standing to sue in federal court).  To survive a motion to dismiss under Rule 12(b)(1), the Complaint must include "general factual allegations of injury resulting from a defendant's conduct."  *Case v. Miami Beach Healthcare Grp., Ltd.*, 166 F. Supp. 3d 1315, 1318 (S.D. Fla. 2016) (Martinez, D.J.).  In the Rule 12(b)(1) context, the Court is not required to accept Plaintiff's factual allegations as true.  *Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800-UU, 2012 WL 9391827, at *1–2 (S.D. Fla. Oct. 18, 2012)

(Ungaro, D.J.) ("Because a factual Rule 12(b)(1) motion challenges the court's power to hear the claim, the court must closely examine the plaintiff's factual allegations and 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" . . . "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating itself the merits of jurisdictional claims.") (quoting *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  To survive a motion to dismiss under 12(b)(6), Plaintiff must plead sufficiently detailed facts to raise her right to relief above the speculative level and "'naked assertions' devoid of 'further factual enhancement[]'" are insufficient to satisfy this pleading obligation.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557).  In ruling on a Rule 12(b)(6) motion, a court may consider documents, such as the Associate Benefits Book, that are central to the plaintiff's claim and undisputed.  *Trinidad & Tobago Unit Trust Corp.*, 280 F.R.D. at, 677–78.

## ARGUMENT

## I.  THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE OR ESTABLISH ARTICLE III STANDING.

At the threshold, Plaintiff "must 'clearly . . . allege facts demonstrating'" that she has standing to assert her claims.  *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  As the party invoking federal jurisdiction, Plaintiff has the burden of establishing that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.* (citing *Lujan*, 504 U.S. at 560-61).  The Complaint in this case fails to allege facts demonstrating that

Plaintiff has suffered any injury, must less an injury that is fairly traceable to any of the alleged deficiencies in the COBRA Notice.  Accordingly, Plaintiff lacks standing and this case should be dismissed.

> **A.     The Complaint Fails to Establish that Plaintiff Has Suffered an Injury in Fact.**

To establish injury in fact, Plaintiff must demonstrate that she "suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).  Although Plaintiff claims (incorrectly, as explained in Section II, *infra*), that the COBRA Notice does not comply with the applicable regulation, 29 C.F.R. § 2590.606-4, the Complaint fails to allege facts demonstrating that she has suffered any concrete injury from any alleged defect.

The Supreme Court's recent decision in *Spokeo* makes clear that "Article III standing requires a *concrete* injury even in the context of a statutory violation."  *Spokeo*, 136 S. Ct. at 1549 (emphasis added).  The plaintiff in *Spokeo* had sued under the Fair Credit Reporting Act ("FCRA"), alleging that a consumer reporting agency published false information about him and seeking statutory penalties of up to $1000 per violation.  *See id.;* 15 U.S.C. § 1681n(a).  In vacating the Ninth Circuit's holding that the plaintiff had sufficiently alleged injury, the Supreme Court rejected the view that a plaintiff satisfies the Article III injury requirement merely because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  136 S. Ct. at 1549.  Rather, Article III requires a concrete injury that is "real, and not abstract."  *Id.* at 1548 (internal quotations omitted).  While acknowledging that Congress can create new rights, the Court held that a plaintiff cannot establish injury based on a "bare procedural violation, divorced from any concrete harm."  *Id*. at 1549.

Consistent with *Spokeo*, courts within the Eleventh Circuit have dismissed cases for lack of Article III standing where a plaintiff has alleged nothing beyond a bare procedural injury.  In *Nicklaw v. CitiMortgage, Inc.*, the plaintiff sued, alleging violation of a New York law that required the defendant to record a certificate of discharge after plaintiff paid off his mortgage, triggering statutory penalties.  839 F.3d 998, 1000 (11th Cir. 2016).  He argued that he had suffered injury from deprivation of his statutory right to have the discharge notice timely recorded.  *Id.*  The court held that even though the statute created a substantive right, plaintiff had not suffered a concrete injury because he was not harmed when this right was violated.  *Id.* at 1002.  The delay in recordation did not cost plaintiff money or lower his credit score.  *Id.* at 1003.  In fact, no one was even aware that the certificate had not been recorded within the statutory period.  *Id.*  Without any allegations of real, *de facto* injury, the court dismissed the appeal for lack of jurisdiction.  *Id.*; *see also Zia v. CitiMortgage, Inc.*, No. 15-cv-23026, 2016 WL 5369316 (S.D. Fla. Sept. 26, 2016) (holding that plaintiff lacked Article III standing to pursue claim for statutory penalties based on alleged failure to record satisfaction of mortgage within statutory time period).

Other appellate courts applying *Spokeo* in the ERISA context have not hesitated to affirm dismissals where plaintiffs failed to identify precise harm resulting from an alleged statutory violation.  In *Soehnlen v. Fleet Owners Insurance Fund*, the Sixth Circuit rejected the plaintiffs' argument that "by merely alleging a violation of ERISA rights, they satisfy their obligation under Article III."  --- F.3d ----, No. 16-3124, 2016 WL 7383993, at *3 (6th Cir. Dec. 21, 2016).  The court held that the plaintiffs did not have standing because they "never show[ed] precisely what concrete harm they suffer[ed] as a result of Defendants' violations of their ERISA rights."  *Id.*; *see also id.* ("[W]e . . . take the [Supreme] Court at its word when it cautions that 'Congress' role

8

in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'") (quoting *Spokeo*, 136 S. Ct. at 1548).   Similarly, on remand from the Supreme Court in light of *Spokeo*, the Fifth Circuit reinstated its decision in *Lee v. Verizon Communications, Inc.*, holding that the plaintiff lacked standing to sue under ERISA because he had not alleged any concrete harm.  837 F.3d 523, 530 (5th Cir. 2016) ("[B]ecause Pundt's 'concrete interest' in the plan—his right to payment—was not alleged to be at risk from the purported statutory deprivation, Pundt had not suffered an injury that was sufficiently "concrete" to confer standing.").

Plaintiff here has alleged nothing more than bare procedural violations of the COBRA notice requirements that had no impact on her whatsoever.  Even if Wal-Mart's Notice were technically deficient in the ways she claims (and it is not, *see infra* Section II), she has not suffered an injury in fact because she has not claimed and cannot claim she has been harmed by the alleged deficiencies.  For example, one alleged deficiency is that the COBRA Notice does not explain "that a spouse of the covered employee may elect continuation coverage on behalf of all other qualified beneficiaries."[4]  While the Notice plainly meets this requirement (*see infra* at 16), Plaintiff does not allege that she actually has a spouse to whom such a defect might be relevant.  Plaintiffs' allegation that the Notice contains "no explanation that a legal guardian may elect continuation coverage on behalf of a minor child" fares no better – the Complaint nowhere alleges that Plaintiff is the legal guardian of a minor child in addition to her own children who

---

[4] Compl. ¶ 16(c).

are clearly identified in the Notice.[5]  Nor does the Complaint allege any other facts establishing that Plaintiff has suffered a concrete injury.

The Eleventh Circuit's unpublished post-*Spokeo* decision in *Church v. Accretive Health Inc.*[6] is not to the contrary.  The plaintiff in *Church* alleged that the defendant violated the Fair Debt Collection Practices Act ("FDCPA") by failing to include required disclosures in a debt collection communication.  654 Fed. App'x at 991.  Although the court held that the lack of disclosures was itself an injury sufficient to constitute concrete harm, *id.* at 994-95, the FDCPA is designed to curb "abusive, deceptive, and unfair debt collection practices," 15 U.S.C. § 1692(a), which include the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e; *see Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-cv-1349-J-34PDB, 2016 WL 4369424, at *8 (M.D. Fla. Aug. 16, 2016).  In other words, Congress determined under the FDCPA that any type of deceptive or misleading disclosure is harmful.  It defined the dissemination of such information as unlawful and, correspondingly, receipt of such a communication as an injury in itself. Receiving deficient letters is precisely the type of harm Congress intended to prevent.  *See Church*, 654 F. App'x at 993-95 (when Congress's ultimate goal is to prevent the dissemination of false or misleading information, receiving incorrect information is sufficient to establish an injury in fact); *Prindle*, 2016 WL 4369424 at *9 ("As the object of allegedly false, deceptive, and/or misleading representations in connection with the collection of a debt, [the plaintiff] has

---

[5] Compl. ¶ 16(d); *see also infra* at 17.

[6] 654 F. App'x 990 (11th Cir. 2016) (per curiam).  Unpublished decisions, of course, have no precedential value.  *See* 11th Cir. R. 36-2 ("Unpublished decisions are not considered binding precedent, but they may be cited as persuasive authority.").

alleged that she has suffered injury in precisely the form the [FDCPA] was intended to guard against.  She therefore need not allege any additional harm beyond the one Congress has identified.") (citing *Spokeo*, 136 S. Ct. at 1549) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)).

Unlike the FDCPA, COBRA has nothing to do with goals like policing the dissemination of information as an end in itself and everything to do with supporting an underlying right—the right to obtain continuation coverage.  COBRA was enacted as a response to "reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay."  H.R. REP. NO. 241, 99th Cong., 2d Sess. at 44 (1985); *see also Phillips v. Saratoga Harness Racing, Inc.,* 240 F.3d 174, 179 (2d Cir. 2001).  Its goal is to allow individuals the opportunity to elect temporary continuation coverage, not to require disclosure for disclosure's sake.  *See Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1230 (11th Cir. 2002) ("The notice must be sufficient to permit the discharged employee to make an informed decision whether to elect coverage."); *see also* Health Care Continuation Coverage, 69 Fed. Reg. 30084, 30093 (May 26, 2004) (codified at 29 C.F.R. § 2590.606-4) ("Improvements in the consistency and quality of information provided to participants and beneficiaries will help them understand their rights and limit their risk of losing the opportunity to elect COBRA coverage.").

Thus, when plaintiffs allege noncompliance with COBRA's notice requirement, without showing that such noncompliance affected their underlying right, they have failed to allege anything more than a bare procedural violation.  *See Friends of Animals v. Jewell,* 828 F.3d 989, 992 (D.C. Cir. 2016) (explaining that a lack of information, or an "informational injury," is sufficient to constitute an injury in fact only where the plaintiff alleges "1) it has been deprived

of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and 2) it suffers, by being denied access to that information, *the type of harm Congress sought to prevent by requiring disclosure*") (emphasis added); *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) ("[W]e understand *Spokeo*, and the cases cited therein, to instruct that an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and *where the procedural violation presents a "risk of real harm" to that concrete interest.* But even where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest.*") (citations omitted) (emphasis added). Because procedural violations of COBRA's notice requirements, without more, are insufficient to establish that Plaintiff has suffered a concrete injury, the Complaint must be dismissed for lack of Article III standing. *Spokeo*, 136 S. Ct. at 1549 (plaintiffs cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury in fact requirement of Article III").

**B.      The Complaint Fails to Establish that Plaintiff's Inability to Elect Continuation Coverage Was Caused by the Alleged COBRA Deficiencies.**

The Complaint's allegations are also insufficient to satisfy the causation requirement of Article III standing. Only one sentence of the entire Complaint purports to address the impact of the allegedly deficient COBRA Notice on Plaintiff, and it states only that "Plaintiff was unable to obtain continuation coverage *after receiving* the deficient election notice." Compl. ¶ 21 (emphasis added). Nowhere does the Complaint allege any plausible connection between any of the supposed deficiencies in the Notice (*see* Compl. ¶ 16) and Plaintiff's failure to obtain coverage. For example, it does not allege that because of any supposed failure to provide contact

12

information for the COBRA administrator—though the Notice in fact provides that information, *see infra* Section II.B.—Plaintiff was unable to contact the administrator with questions.  Nor does it allege that any supposed failure to reference where a qualified beneficiary may obtain additional information—though the Notice in fact provides that information as well, *see infra* Section II.F.—rendered her unable to obtain such information and therefore to secure continuation coverage.

The sole connection that the Complaint draws between the alleged deficiencies and any effect on Plaintiff is a temporal one—that her alleged failure to secure continuation coverage followed receipt of the Notice.  Courts have repeatedly rejected such temporal connections as insufficient to establish causation.  In *Perez v. Sears Life Ins. Co.*, 968 F. Supp. 2d 1192 (S.D. Fla. 2013) (Altonaga, D.J.), for example, the court rejected an insurance beneficiary's argument that her husband's death was accidental, and thus covered under the insurance policy, simply because the death followed an alleged assault:

> Drawing such a conclusion from a temporal relationship leads to the blunder of the *post hoc ergo propter hoc* ("after this, because of this") fallacy, which assumes causality from temporal sequence.  The fallacy makes the false assumption that a temporal relationship proves a causal relationship.  In other words, Morales's death following the alleged attack does not prove the attack caused or triggered his death without additional evidence of causation.

*Id.* at 1201 (citing *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005)); *see also McClain*, 401 F.3d at 1243 ("[P]roving a temporal relationship . . .  does not establish a causal relationship . . .  simply because a person takes drugs and then suffers an injury does not show causation."); *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1343 (11th Cir. 2010).

Plaintiff's conclusory allegation of a temporal relationship is insufficient to establish causation, and her Complaint should be dismissed for lack of Article III standing.  *See generally*

CASE NO.: 16-24818-CIV-MARTINEZ-GOODMAN

*Blake v. Seterus, Inc.,* No. 16-21225-CIV-KING, 2016 WL 4767551, at *2 (S.D. Fla. Sept. 13, 2016) (King, D.J.) ("Conclusions . . . must be supported by factual allegations.  To establish causation, Plaintiff must allege *facts* showing that but for Defendant's wrongful conduct he would not have been frustrated in his ability to reinstate the loan.") (emphasis in original); *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 80–81 (1st Cir. 2013) (applying *Iqbal* standard to allegation of causation).

## II.    THE COBRA NOTICE COMPLIES WITH APPLICABLE LEGAL REQUIREMENTS.

Contrary to Plaintiff's allegations, the COBRA Notice incorporated by reference and attached to the Complaint complies with the applicable Department of Labor regulation.  As explained below, all of the six shortcomings alleged in the Complaint are either wholly conclusory or are affirmatively refuted by the Notice itself.  *See supra* at 3 (citing *Trinidad & Tobago Unit Trust Corp.*, 280 F.R.D. at 677–78).  The Complaint thus fails to state a plausible claim and must be dismissed under Rule 12(b)(6).

### A.    The Notice Is Written In a Manner Calculated To Be Understood By the Average Participant.

The Complaint's assertion that "[t]he Notice … fail[s] to provide notice of continuation coverage written in a manner calculated to be understood by the average plan participant" (Compl. ¶ 16(a)) is devoid of factual support.  According to the Complaint:

> The notice provided to Plaintiff is confusing, ambiguous and critical components, if included, are piecemealed throughout the notice rather than being made clear and understandable to the average plan participant.

*Id*.  These assertions are simply too conclusory to be accepted as true.  *See supra* at 6 (citing *Iqbal*, 556 U.S. at 678).  They also are refuted by the Notice itself, which is written in the same language as the model notice and largely tracks its format.  No more is required.  *See* 29 C.F.R.

14

§ 2590.606-4(g) ("Use of the model notice, appropriately modified and supplemented, will be deemed to satisfy the notice content requirements of paragraph (b)(4) of this section."). The Complaint fails to identify any language that is confusing or ambiguous, let alone any "components" that are "piecemealed" in a manner that would lead Plaintiff or any other participant to fail to understand his or her rights. Without identifying any specific language or "component" of the Notice that purportedly fails to comply with the applicable regulation, these assertions fail to state a plausible claim of noncompliance.

### B.     The COBRA Notice Provides the Contact Information for the COBRA Administrator at Multiple Points.

The Complaint erroneously asserts that the Notice "fails to provide the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits." Compl. ¶ 16(b). That assertion is based entirely on the Complaint's allegation that the Notice fails to identify "any party or entity clearly and unambiguously … as the *Plan Administrator*." *Id.* (emphasis added). However, the regulation on its face does *not* require that the Plan Administrator's contact information be provided. Instead, the regulation calls for the name, address, and telephone number of the Plan's COBRA administrator, *i.e.*, "party responsible under the plan for the administration of continuation coverage benefits." *See* 29 C.F.R. § 2590.606-4(b)(4)(i). The Preamble to the regulation distinguishes between plan administrators and COBRA administrators and indicates that the Department removed a proposed requirement to identify the former. *See* 69 Fed. Reg. 30084, 30085 ("The Department also has modified the model general notice to eliminate identification of both the plan administrator and the COBRA administrator. As modified, the model general notice requires

only the name, address, and phone number of a party or parties who will provide information about the plan and COBRA upon request.").

The COBRA Notice here at issue indisputably provides the contact information of the Wal-Mart plan's COBRA administrator, CONEXIS, at multiple points.  Compl. App'x B at 1, 2, 7.  By identifying CONEXIS as the party "who will provide information about the plan and COBRA upon request" and providing its contact information, the COBRA Notice plainly satisfies the regulation and serves the rule's purpose of ensuring participants know their rights, *see id.* at 30093.  There is thus no merit to Plaintiff's claim.

### C.   The Notice Indicates That a Spouse May Elect Coverage for Other Beneficiaries.

The Complaint also alleges incorrectly that the Notice "fails to provide [an] explanation that a spouse of the covered employee may elect continuation coverage on behalf of all other qualified beneficiaries."  Compl. ¶ 16(c).  The following passage from the Notice fulfills this requirement by explaining that a spouse of a covered Wal-Mart associate may elect coverage on behalf of his or her children:

> Each qualified beneficiary has a separate right to elect continuation coverage.  For example, the associate's spouse may elect continuation coverage even if the associate does not.  Continuation coverage may be elected for only one, several, or for all dependent children who are qualified beneficiaries.  A parent may elect to continue coverage on behalf of any dependent.

Compl. App'x B at 7.  This passage tracks nearly verbatim the 2004 version of the model notice, except that "associate" is substituted for the word "employee."[7]  *Cf.* 69 Fed. Reg. at 30109.

---

[7] Wal-Mart refers to its employees as associates.

Again, no more is required. *See* 29 C.F.R. § 2590.606-4(g) (allowing use of model notice "appropriately modified and supplemented").[8]

> **D.     The Notice Indicates that a Qualified Beneficiary May Elect Continuation Coverage for All Dependent Children.**

The Complaint's allegation that the Notice "fails to provide [an] explanation that a legal guardian may elect continuation coverage on behalf of a minor child, or a minor child who may later become a qualified beneficiary" is likewise misplaced. Compl. ¶ 16(d). Contrary to the Complaint, the regulation says nothing about "a minor child who may later become a qualified beneficiary." *See* 29 C.F.R. § 2590.606-4(b)(4)(iv). Furthermore, as discussed above, the Notice explains that a *qualified beneficiary* (who could be a legal guardian) may elect continuation coverage "for only one, several, or for all dependent children who are qualified beneficiaries." Compl. App'x B at 7. The language in the Notice tracks that of the 2004 version of the model notice. *Cf.* 69 Fed. Reg. at 30109. Further, there is no explicit statement in the model notice that a *legal guardian* (as distinct from any other qualified beneficiary) may elect continuation coverage on behalf of a minor child.[9]

> **E.     The Notice Explains that a Decision Whether to Elect Coverage Will Affect the Future Rights of Qualified Beneficiaries.**

The Complaint is also mistaken in alleging that the Notice fails to provide an "explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage,

---

[8] Furthermore, as explained *supra*, there is no allegation that the Plaintiff in this case has "other qualified beneficiaries" who are neither Plaintiff's spouse nor her dependent children.

[9] In any event, as explained *supra*, there is no allegation that the Plaintiff in this case is a *non-parent* legal guardian of any dependent child.

guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act." Compl. ¶ 16(e).  The Notice largely tracks the language of the model notice, providing that failure to elect coverage may have an impact on a beneficiary's future rights, including his or her rights to participate in the health insurance marketplace. *Compare* Compl. App'x A at 5-6 ("[B]e careful though - if you terminate your COBRA continuation coverage early without another qualifying event, you'll have to wait to enroll in Marketplace coverage until the next open enrollment period, and could end up without any health coverage in the interim."), *with id.* App'x B at 9 ("NOTE:  If you terminate your COBRA coverage early without another qualifying event, you will have to wait to enroll in Marketplace coverage until the next open enrollment period, and could end up without any health coverage in the interim.").

**F.     The Notice Provides Multiple References to Where a Qualified Beneficiary May Obtain Additional Information.**

The Complaint is equally wrong in claiming that "there is no 'reference to where a qualified beneficiary may obtain additional information about such rights.'"  Compl. ¶ 16(e).  The Notice at multiple points provides contact information for CONEXIS, the COBRA administrator, and guides participants to the Associate Benefits Book, which provides additional information. *See supra* at 4; Compl. App'x B at 2 ("If you have any questions about this notice or your rights to COBRA continuation coverage, you should contact CONEXIS at (800) 570-1863, or refer to the COBRA section in your Associate Benefits Book.").

In short, the COBRA Notice attached to the Complaint provides all of the information required by the regulation, alerts qualified beneficiaries at multiple points to where they can obtain additional information, and fully satisfies the notice requirement's goal of providing

participants the tools they need to secure continuation coverage.   The Complaint fails to plausibly allege that the Notice is deficient and should be dismissed under Rule 12(b)(6).

### III.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE WAL-MART HAD NO RESPONSIBILITY TO PROVIDE THE COBRA NOTICE AT ISSUE.

While Wal-Mart is the employer sponsor of the Plan in which Plaintiff participated, it is *not* the "administrator" of that Plan.   As a result, Wal-Mart had no responsibility or obligation under ERISA to provide Plaintiff with the COBRA notice at issue in this litigation and the Complaint must be dismissed.

Section 606(a)(4) of ERISA, 29 U.S.C. § 1166(a)(4), requires the "administrator" of a group health plan to notify a qualified beneficiary who would lose plan coverage as the result of a qualifying event of their right to elect COBRA continuation coverage.   "Administrator" is defined in ERISA § 3(16)(A)(i) of ERISA, 29 U.S.C. § 1002(16)(A)(i), as "the person specifically so designated by the terms of the instrument under which the plan is operated."[10] The potential penalty that Plaintiff seeks under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), for the alleged notice deficiency likewise is imposed only upon the "administrator" of a plan.

Here the Plan's governing documents specifically designate a party other than Wal-Mart as the administrator of the Plan.   2016 Associate Benefits Book at 238.   Since Wal-Mart, by definition, is not the administrator of the Plan, it can have no responsibility or liability for the alleged violation and Plaintiff's Complaint must be dismissed.   *See McDowell v. Krawchison*, 125 F.3d 954, 962 (6th Cir. 1997); *Olick v. Kearney*, 451 F. Supp. 2d 665, 673 (E.D. Pa. 2006).

---

[10] A plan sponsor such as Wal-Mart would be the "administrator" of a plan only in cases where the plan documents fail to designate a party as the administrator.   ERISA § 3(16)(a)(ii), 29 U.S.C. § 1002(16)(a)(ii).

CASE NO.: 16-24818-CIV-MARTINEZ-GOODMAN

## REQUEST FOR HEARING

As this Motion raises important issues regarding Plaintiff's constitutional standing, the sufficiency of her pleading, and her ability to proceed on behalf of a putative class, Wal-Mart respectfully requests a hearing before the Court.  A hearing would be helpful to the Court in outlining the ongoing application of *Spokeo*, the details of Wal-Mart's COBRA Notice, and the deficiencies in the Complaint.  Counsel estimates a half-hour would be necessary for such a hearing.

## CONCLUSION

For the foregoing reasons, Wal-Mart respectfully requests that the Court grant its motion in all respects and dismiss the Complaint with prejudice, and order such other relief as the Court deems just and proper.

Dated: January 12, 2017                             Respectfully submitted,


By:/s/ *Mark F. Bideau*
MARK F. BIDEAU, ESQ.
Florida Bar No. 564044
GREENBERG TRAURIG, P.A.
777 S. Flagler Drive, Suite 300 East
West Palm Beach, FL  33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222
E-Mail:bideaum@gtlaw.com
FLService@gtlaw.com

HILARIE BASS, ESQ.
Florida Bar No. 334323
ELIZABETH COPPOLECCHIA, ESQ.
Florida Bar No. 86747
GREENBERG TRAURIG, P.A.

CASE NO.: 16-24818-CIV-MARTINEZ-GOODMAN

333 Avenue of the Americas
(333 S.E. 2nd Avenue)
Suite 4400
Miami, FL  33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
E-Mail: bassh@gtlaw.com
coppolecchiae@gtlaw.com


*and*


PAUL J. ONDRASIK, JR.
*Pro Hac Vice* Motion Pending
ERIC G. SERRON
*Pro Hac Vice* Motion Pending
OSVALDO VAZQUEZ
Florida Bar No. 0070995
LAURA LANE-STEELE
*Pro Hac Vice* Motion Pending
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., N.W.
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
E-Mail: pondrasik@steptoe.com

*Counsel for Defendant, Wal-Mart Stores, Inc.*

21

CASE NO.: 16-24818-CIV-MARTINEZ-GOODMAN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Dismiss and Incorporated Memorandum of Law was served electronically, on January 12, 2017, on all counsel or parties of record on the service list.

## SERVICE LIST

**Luis A. Cabassa, Esq.**
**Brandon J. Hill, Esq.**
Wenzel Fenton Cabassa, P.A.
1110 N. Florida Ave., Suite 300
Tampa, FL 33602
Telephone: (813) 224-0431
E-mail: lcabassa@wfclaw.com
bhill@wfclaw.com

**Chad A. Justice, Esq.**
Black Rock Trial Lawyers
201 Westland Avenue
Tampa, FL 33606
Telephone: (813) 254-1777
E-mail: chadjustice@blackrocklaw.com
litigation@blackrocklaw.com

*/s/ Mark F. Bideau*
MARK F. BIDEAU