**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 16-24818-CIV-MARTINEZ-GOODMAN**

**JAMIE BRYANT,**

      **Plaintiff,**

**v.**

**WAL-MART STORES, INC.,**

      **Defendant.**
_____/

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND SUPPORTING**
<u>**MEMORANDUM OF LAW**</u>

Pursuant to Fed.R.Civ.P. 23, Lead Plaintiff, Jamie Bryant ("Plaintiff), and Proposed[1] Named Plaintiffs Dawn Smith, Curtis Baker, and Earnest Penedianco (collectively, "Plaintiffs"), respectfully move this Honorable Court for an Order certifying two classes:

### Class # 1: The January 26, 2016 to December 14, 2016 Deficient COBRA Notice Class

All participants and beneficiaries in the Defendant's Health Plan who: (1) were sent a COBRA notice by Defendant or on behalf of Defendant from January 26, 2016 to December 14, 2016, in the form attached to the Motion as Exhibit A, as a result of a qualifying event, as determined by Defendant's Plan's records, and (2) did not elect continuation coverage.

### Class # 2: The June 1, 2013 to January 25, 2016 Deficient COBRA Notice Class

All participants and beneficiaries in the Defendant's Health Plan who: (1) were sent a COBRA notice by Defendant or on behalf of Defendant from June 1, 2013 to January 25, 2016, in one of the forms attached to the Motion as Composite Exhibit B, as a result of a qualifying event, as determined by Defendant's Plan's records, and (2) did not elect continuation coverage.

## I.      BRIEF OVERVIEW OF MOTION

In this lawsuit Lead Plaintiff Jamie Bryant alleges that Defendant Walmart failed to provide her with a COBRA notice that complies with the law.  Despite having access to the Department of Labor's Model COBRA form, Defendant chose not to use the model form— presumably to save money by discouraging people from electing COBRA coverage.  COBRA coverage is inherently expensive for employers. According to one Congressional research service study, "…[The] average claim costs for COBRA beneficiaries exceeded the average claim for an active employee by 53%. The average annual health insurance cost per active employee was $7,190, and the COBRA cost was $10,988.14. The Spencer & Associates analysts contend that this indicates that

---

[1] Plaintiff's Motion for Leave to file a Second Amended Complaint adding Dawn Smith, Curtis Baker, and Earnest Penedianco as additional Named Plaintiffs is pending at Doc. 82. These three individuals have not been granted leave of Court to join this lawsuit as Named Plaintiffs and, thus, they are referred to herein merely as "Proposed Named Plaintiffs."

the COBRA population is sicker than active-covered employees and that the 2% administrative fee allowed in the law is insufficient to offset the difference in actual claims costs." *Health Insurance Continuation Coverage Under COBRA*, Congressional Research Service, Janet Kinzer, July 11, 2013.

In this case, Walmart's COBRA notice fails to identify the Defendant's Plan Administrator, "The Administrative Committee of the Walmart Stores, Inc. Associates' Health and Welfare Plan" ("the Plan"). The COBRA notice also omits basic information for the Plan, including its phone number and mailing address. And as this Court held when it denied Walmart's Motion to Dismiss (see Doc. 64), "Defendant's notice omits any reference to the plan administrator's name, address, and telephone number, as required by 29 C.F.R. § 2590.606-4(b)(4)(i). Without the plan administrator's name, address, and telephone number, this Court finds that Defendant's notice is not 'sufficient to permit the discharged employee to make an informed decision whether to elect coverage.' " (Doc. 64, p. 11) (citing and quoting *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d. 1223, 1230 (11th Cir. 2002)).

By omitting from its COBRA notice the phone number and identity of the Walmart Plan Administrator, Walmart saves money yet another way: by reducing the calls it must answer with questions about COBRA. For example, Walmart's Senior Director of People Services, Ms. Cheri McClure, testified that Walmart saves money when the volume of calls to its benefits Contact Center is lower. (McClure, p. 34, lines 24-25 through p. 35, lines 1-13). Obviously, not including a phone number or even the name of the Plan Administrator helps ensure Walmart will receive fewer calls related to COBRA. And fewer calls helps Walmart's bottom line. (McClure, p. 35, lines 5-13).

In sum, the Court has already concluded that Defendant's COBRA notice violates Section

29 C.F.R. § 2590.606-4(b)(4)(i), and nothing has changed since the Court's well-reasoned decision. Any challenge mounted by Defendant to the Court's prior decision as to the content of its deficient COBRA notice would apply uniformly. Such a decision therefore is appropriately made to the class members as a whole, as evidenced by a nearly identical class certified in a COBRA class action styled *Vazquez v. Marriott Int'l, Inc.*, No. 817-cv-00116-MSS-MAP, 2018 WL 3860217, at *1 (M.D. Fla. Aug. 7, 2018).  The *Vazquez* class certification order is attached as Exhibit C. Notably, the Eleventh Circuit Court of Appeals rejected the *Vazquez* defendant's petition seeking permission to appeal the *Vazquez* class certification order (*see* Exhibit D), further demonstrating the propriety of class treatment in this case, which is nearly identical.

## II.   SUPPORTING FACTS

1.      Lead Plaintiff Jamie Bryant worked for Walmart for almost seven years, from December of 2009 until April 8, 2016.  (Doc. 53, p. 1); (Bryant, p. 25, lines 2-10). Both she and her two young children were participants in the Walmart health Plan.  (Bryant, p. 26, lines 16-18).

2.      Similarly, the proposed Named Plaintiffs Dawn Smith, Curtis Baker, and Earnest Penedianco also worked for Walmart and were participants in the Walmart health Plan.  (*See* attached Declarations of Smith, Baker, and Penedianco, ¶¶ 4).

3.      It is undisputed that at some point from January 26, 2016 to December 14, 2016, when their respective jobs at Walmart ended, Plaintiffs each experienced a "qualifying event" under 29 U.S.C. § 1163(2), entitling them to notification of their rights under COBRA.    After they experienced a qualifying event Defendant's COBRA Administrator, WageWorks, mailed Plaintiffs an identical COBRA notice, attached as Exhibit A.  (Declaration of Jason Folks, ¶ 6); (*see also* Pickard Depo., p. 15, lines 5-25).  This is the same COBRA notice this Honorable Court held violated 29 C.F.R. § 2590.606-4(b)(4)(i) (*see* Doc. 64).

3

4.     As explained by Defendant's corporate representative and Senior Manager of People Service, Stephanie Pickard, it ultimately was Defendant's employees who edited and approved the content of the COBRA form at issue in this lawsuit.  (Pickard, p. 30, lines 2-25; p. 31, lines 1-5; p. 34, lines 14-19).

5.     This same COBRA form was used by Walmart from January 26, 2016 through December 14, 2016, and sent to 150,000+ individuals.  (Declaration of Jason Folks, ¶¶ 6-9); (*see also* Pickard, p. 32, lines 13-25; p. 33, lines 5-6; p. 34, lines 11-13).

6.     The members of Class #1 are readily ascertainable from the records of Defendant's COBRA Administrator, WageWorks. (Declaration of Jason Folks, ¶¶ 6-9), and from Defendant's own electronic system that Walmart uses to track the employment records.  (Pickard, p. 63, lines 13-25 through p. 65, lines 1-5); (*see also* Wellborn, p. 36, lines 4-9).

7.     In fact, as demonstrated by the attached Sworn Declaration from Jason Folks, an employee of WageWorks, the COBRA notice attached as Exhibit A was actually sent to 152,742 of Defendant's employees from January 26, 2016 to December 14, 2016.  (Declaration of Jason Folks, ¶ 6).  Of that total, 4,971 elected coverage.   (Declaration of Jason Folks, ¶ 7).  The number of employees who did not elect continuation coverage during the First Class Period was 147,771. Those 147,771 individuals are the putative class members of Class #1.

8.     Much of the same is true for Class #2.  Before Walmart began using Exhibit A as its COBRA notice, more specifically from June 1, 2013 until January 25, 2016, Walmart used the three COBRA notices attached as Composite Exhibit B.  (Declaration of Jason Folks, ¶ 10).

9.     Those three COBRA notices are meaningfully identical to Exhibit A in that, like Exhibit A, in violation of 29 C.F.R. § 2590.606-4(b)(4)(i), the Exhibit B COBRA notices fail to identify the Plan Administrator, and fail to include the Plan Administrator's mailing address or

phone number. (*Compare* Exhibit A notice with notices in Composite Exhibit B).

10. The only substantive difference between the COBRA notices the class members in Class #1 received (Exhibit A), versus those in Class #2 received (Composite Exhibit B), is inclusion of certain language regarding the national health insurance "Marketplace," along with varying costs for coverage which changed year-to-year. (*Compare* Exhibit A notice with notices in Composite Exhibit B); (*see also* Wellborn, p. 43, line 15 through p. 44, line 2).

11. Because each of the COBRA notices attached as Exhibit B violate 29 C.F.R. § 2590.606-4(b)(4)(i) in precisely the same manner explained by the Court as to Exhibit A, Class #2 should also be certified.

12. Like the class members from Class #1, the members of Class #2 are readily ascertainable from the records of WageWorks, and also from Defendant's own records. (*See generally* Declaration of Jason Folks, ¶ 10); (*see also* Pickard, p. 32, lines 13-25; p. 33, lines 5-6)

13. As a result of not receiving a timely COBRA notice, Plaintiffs each suffered an informational injury because they did not receive all information to which they were entitled to in a COBRA notice. (Bryant, p. 39, line 17 through p. 41, line 6); (*see also* attached Declarations of Smith, Baker, and Penedianco, ¶¶ 4-6).

14. Plaintiffs also suffered multiple economic injuries because of Defendant's untimely COBRA notice. First, they each lost their Walmart health insurance. (*See* attached Declarations of Smith, Baker, and Penedianco, ¶¶ 5-7).

15. In fact, Lead Plaintiff Jamie Bryant testified she lost health insurance coverage (Bryant, p. 18, lines 8-12; p. 38, lines 1-16), and was likely not covered again until June of 2016. (Bryant, p. 58, lines 6-14; p. 118, lines 3-8. This was a significant loss due, in part, to the fact that her young daughter needed surgery and her son had recently undergone a serious medical

procedure requiring follow-up medical care.  (Bryant, p. 144, lines 10-16). She also suffered an economic injury in the form of higher insurance premiums.  (Bryant, p. 37, lines 5-10).

16.     Besides the economic damages suffered by Ms. Bryant, proposed Named Plaintiff Dawn Smith also incurred out-of-pocket expenses for medical related coverage as a result of Defendant's deficient COBRA notice.  During the months preceding the end of her employment Smith became very ill and, ultimately, her employment ended because of absences related to her health problems.   (*See* attached Declaration of Smith, ¶ 5).

17.     She, like all of the Plaintiffs, received the COBRA form attached as Exhibit A. Ultimately, she lost her health insurance as a result of Defendant's COBRA notice and suffered economic damages in the form of medical bills as a result.  (*See* attached Declaration of Smith, ¶¶ 5-7).

18.     Finally, when responding to this Motion Walmart will likely argue that it is somehow not a proper party to this lawsuit and, instead, the proper Defendant is the "Administrative Committee of the Wal-Mart Stores, Inc. Associates Health and Welfare Plan" ("the Plan Defendant").   (*See* Doc. 37, Defendant's Motion to Dismiss the First Amended Complaint, p. 20).

19.     But if raised, this argument should be ignored entirely.  First, Plaintiff's Motion for Leave seeking leave of Court to add the Plan Defendant is pending at Doc. 82.  Plaintiffs respectfully submit that Motion should be granted.  If it is, such arguments by Walmart become moot.

20.     Second, this Court has already determined that Walmart Stores, Inc., is a proper defendant due to the non-inclusion of the Plan Defendant in the COBRA notice at issue.  *See* Doc. 64, p. 13.  Nothing has changed during litigation that warrants a reversal of the Court's well-

reasoned decision on this issue.  In fact, discovery has shown that the "Plan" does not have any employees, nor did the Plan's Committee.  (Wellborn, p. 13, lines 18-24; p. 14, lines 2-6).  Rather, Walmart employees who performed work for the Plan or Committee worked, in fact, for Walmart. Both Walmart and the Pare even represented by the same lawyers.

21.     Third, and finally, it should be noted that Plaintiffs learned during this litigation that, in fact, in 2017 Walmart dissolved the Administrative Committee of the Wal-Mart Stores, Inc. Associates Health and Welfare Plan.  (Wellborn, p. 27, lines 4-11).  Thus, not only does Walmart disclaim liability in this lawsuit, it also seeks to shift its own liability to a defunct (or dissolved) committee.  In sum, this case is ripe for class treatment and this Motion should be granted.

### III.     MEMORANDUM OF LAW

#### A.     Legal Standard for Class Certification.

A district court has broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp*., 959 F.2d 1566, 1569 (11th Cir. 1992).  Rule 23(a) requires that: (1) the class be so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representatives' claims or defenses are typical of those of the class; and (4) the representatives will fairly and adequately represent the interests of the class. Rule 23(b)(3) further requires that: (5) questions of law or fact common to all class members predominate over individual issues, and (6) that the class action mechanism be superior to other available means of adjudicating the controversy.  *See* Fed.R.Civ.P. 23(b)(3).

#### B.     Article III Standing.

Lead Plaintiff Jamie Bryant and each of the proposed Named Plaintiffs have standing under the Supreme Court's landmark decision in *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016).

Here, Plaintiffs have alleged two kinds of harm: (1) **informational harm** in the form of deficient COBRA notice missing information this Court opined is required of COBRA notices, and, (2) **economic harm** in the form of lost insurance benefits, and incurred medical bills.  These individually, and certainly collectively, are sufficient to establish Article III standing.  *See, e.g., Vazquez v. Marriott Int'l, Inc*., No. 817-cv-00116-MSS-MAP, 2018 WL 3860217, at *1 (M.D. Fla. Aug. 7, 2018)(granting Rule 23 Motion Class Certification and holding that "Plaintiff has standing because she alleges facts that present questions of whether: (1) Defendant provided adequate COBRA notification and (2) the failure to receive adequate COBRA notice resulted in unpaid medical bills.")

Through ERISA and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).  *See, e.g., McFarlane v. First Unum Life Ins. Co*., 274 F. Supp. 3d 150, 162 (S.D.N.Y. 2017) (beneficiary's Article III standing established, in part, because of ERISA informational requirement).

Lead Plaintiff Jamie Bryant and the proposed Named Plaintiffs have Article III standing because Defendant failed to provide them with a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a), giving rise to an "informational injury" conferring Article III standing.  In fact, the Supreme Court has long held that not receiving information to which one is entitled by law is a quintessential informational injury that confers Article III standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998); *Citizen v. Department of Justice*, 491 U.S. 440 (1989); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–374 (1982) (holding that the denial of information relating to housing availability satisfied the injury-in-fact requirement); *see also*

*Church v. Accretive Health, Inc*., 654 Fed.Appx. 990, 993 (11th Cir. 2016) (failure to provide informational disclosure under FDCPA was concrete injury).

In this case, Plaintiffs meet the injury-in-fact requirement because they suffered an informational injury. "[T]he Supreme Court has recognized that the purpose of ERISA's disclosure requirement is to 'ensure that the individual participant knows exactly where he stands with respect to the plan.' " *McFarlane*, 274 F. Supp. 3d at 162 (*quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (internal alterations omitted)). Like the injuries complained of in *Federal Election Commission* and *Public Citizens*, Plaintiffs' injuries in this case stem from Defendant's failure to provide Plaintiffs information required by statute, specifically COBRA election information.  Additionally, Defendant's failure to provide COBRA information resulted in a concrete injury because it prevented Plaintiffs from obtaining COBRA continuation coverage. These are sufficiently concrete and particularized injuries to confer Article III standing. *See McFarlane*, 274 F. Supp. 3d at 164 (holding plaintiff's allegations of failure to provide ERISA plan documents sufficient to show injury in fact); *Michael v. La Jolla Learning Inst., Inc*., No. 17-cv-934, 2019 WL 4747658, at *4 (S.D. Cal. Sept. 30, 2019)) (holding plaintiff sufficiently alleged a concrete and particularized injury resulting from defendant's failure to provide compliant COBRA notice).

Also on the issue of standing, while the informational injuries suffered by Plaintiffs are more than sufficient to confer Article III standing, the economic injuries Lead Plaintiff Jamie Bryant and proposed Named Plaintiff Dawn Smith also suffered in the form of lost insurance benefits and medical bills give rise to additional Article III standing.  *See, e.g., Lujan*, 504 U.S. at 559-61 (economic injuries constitute an injury-in-fact for purposes of Article III standing); *In re*

*Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1122 (S.D. Fla. 2019) (holding that economic injuries confer Article III standing).

As set forth above, Lead Plaintiff Jamie Bryant explained during her deposition her economic injuries caused by Defendant's deficient notice when she testified she lost health insurance coverage (Bryant, p. 18, lines 8-12; p. 38, lines 1-16), and was likely not covered again until June of 2016.   (Bryant, p. 58, lines 6-14; p. 118, lines 3-8).  This was a significant loss due, in part, to the fact that Plaintiff's young daughter needed surgery and her son had recently undergone a surgical procedure, requiring follow-up medical care.  (Bryant, p. 144, lines 10-16). Ms. Bryant also suffered an economic injury in the form of higher insurance premiums.  (Bryant, p. 37, lines 5-10).

Besides the economic damages suffered by Ms. Bryant, proposed Named Plaintiff Dawn Smith also incurred out-of-pocket expenses for medical related coverage as a result of Defendant's deficient COBRA notice.  During the months preceding the end of her employment Smith became very ill and, ultimately, her employment ended because of absences related to her health problems. (*See* attached Declaration of Smith, ¶ 5).  Ultimately, she lost her health insurance as a result of Defendant's COBRA notice and suffered economic damages in the form of medical bills as a result.  (*See* attached Declaration of Smith, ¶¶ 5-7).

## C.   <u>The Classes Are Ascertainable.</u>

"An identifiable class exists if its members can be ascertained by reference to objective criteria. The analysis of the objective criteria also should be administratively feasible." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787-88 (11th Cir. 2014).

Proposed class members are former participants and beneficiaries of Defendant's health plan who have been identified by reference to objective criteria.  The class definitions, set forth on

page 1, are nearly identical to the class definitions from other COBRA class actions certified by Florida district courts.[2] Furthermore, it cannot be disputed that it is administratively feasible to identify class members.  In fact, as set forth above, those individuals in Class #1 are readily ascertainable from the records of Defendant's COBRA Administrator, WageWorks. (Declaration of Jason Folks, ¶¶ 6-9), and from Defendant's own "electronic system that Walmart uses to track the employment records." (Pickard, p. 63, lines 13-25 through p. 65, lines 1-5); (*see also* Wellborn, p. 33, line through p. 36, line 9).

**D.     Plaintiffs Satisfied All of the Rule 23(a) Class Certification Requirements.**

     **1.     The Proposed Classes are Sufficiently Numerous.**

The first requirement under Rule 23(a) is that the putative class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Weekes-Walker*, 281 F.R.D. at 524.  Here, both classes easily satisfy the numerosity test.  Testimony provided by Defendant's own witnesses establish that Class #1 is comprised of at least 147,000 persons, as does the attached WageWorks' Declaration from Jason Folks.  Class #2 is likely three times as big as its definition is nearly identical, but three times longer in terms of duration.  *Kilgo v. Bowman Transp., Inc.*, 789 F.3d 859, 878 (11th Cir. 1986) (numerosity satisfied by class of 31 members).  Numerosity is met.

     **2.     Sufficiently Common Questions of Fact and Law Exist.**

Like the numerosity requirement, the commonality requirement of Rule 23(a)(2) is also a "low hurdle" to satisfy. *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are

---

[2] *See Vazquez v. Marriott Int'l, Inc.,* No. 8:17-cv-000116, 2018 WL 3860217, at *2 (M.D. Fla. Aug. 7, 2018), *Hicks v. Lockheed Martin Corp.,* 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019)(Doc. 41)(certifying class of 54,000 individuals in deficient COBRA class action under Rule 23 for settlement purposes), *Carnegie v. FirstFleet, Inc.*, (M.D. Fla. June 21, 2019)(Doc. 63)(certifying class of 2,000+ individuals in deficient COBRA class action under Rule 23 for settlement purposes), and *Valdivieso v. Cushman & Wakefield, Inc.* 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 9, 2018) (same).

susceptible to class-wide proof." *Murray v. Auslander*, 244 F. 3d 807, 811 (11th Cir. 2011).  "The burden to meet the commonality requirement of Rule 23(a) is relatively light." *Napoles-Arcila*, 2009 WL 1585970 at *6.  Courts in this circuit have held that the commonality threshold is met when a defendant has "engaged in a standardized course of conduct that affects all class members." *In re Terazoin Hydrochloride*, 220 F.R.D. 672, 686-87 (S. D. Fla. 2004*).*  Such is the case here.

Here, there are common issues regarding (among other things): (1) whether Defendant violated COBRA's notice requirements as to content; and, (2) whether and to what extent statutory penalties are appropriate.[3]  These issues will be resolved through proof common to every Class Member.  *Pottinger v. City of Miami*, 720 F. Supp. 955, 958 (S.D. Fla. 1989) (holding that although there must be at least one common issue of law or fact, "[i]t is not necessary, however, that the legal claims be identical.").  Thus, these common issues support certification of the Classes.  *See, e.g., Pierce v. Visteon Corp*., No. 1:05-CV-1325-LJM-VSS, 2006 WL 6667384, at *3 (S.D. Ind. Sept. 14, 2006) (holding there was commonality where plaintiff challenged defendants' COBRA notice practices "as applied to the entire class"); *Hornsby v. Macon Cty. Greyhound Park, Inc*., No. 3:10-CV-680-MHT, 2013 WL 173003, at *1 (M.D. Ala. Jan. 16, 2013) (finding commonality satisfied and certifying COBRA notice class).

Plaintiffs' putative classes only include persons sent a COBRA Notice in basically the same form as Exhibit A to this Motion. More specifically, and as set forth above, this ***exact*** same COBRA form was used by Walmart from January 26, 2016 through December 14, 2016, and sent to 150,000+ individuals.  (Declaration of Jason Folks, ¶¶ 6-9); (*see also* Pickard, p. 32, lines 13-25; p. 33, lines 5-6; p. 34, lines 11-13).   This form is attached as Exhibit A.  The individuals in Class #1 all received Exhibit A.

---

[3] The penalty for non-compliance with COBRA can be as high as $110 a day. (The statute says $100, *see* 29 U.S.C. §1132(c)(1), but the Department of Labor raised the cap to $110. *See* 29 C.F.R. §2575.502c-1).

As also explained above, much of the same is true for Class #2.  Before Walmart began using Exhibit A as its COBRA notice -- specifically for the time June 1, 2013 through January 25, 2016 -- it used the three COBRA notices attached as Composite Exhibit B.  (Declaration of Jason Folks, ¶ 10).  Those three COBRA notices are meaningfully identical to Exhibit A in that, like Exhibit A, in violation of 29 C.F.R. § 2590.606-4(b)(4)(i), the Exhibit B COBRA notices fail to identify the Plan Administrator, and fail to include the Plan Administrator's mailing address or phone number.  (Compare Exhibit A notice with notices in Composite Exhibit B).

The only substantive difference between the COBRA notices the class members in Class #1 received (Exhibit A), versus those in Class #2 received (Composite Exhibit B), is inclusion of certain language regarding the national health insurance "Marketplace," along with  varying costs for coverage which changed year-to-year.  (*Compare* Exhibit A notice with notices in Composite Exhibit B).  Because each of the COBRA notices attached as Exhibit B violate 29 C.F.R. § 2590.606-4(b)(4)(i) in precisely the same manner explained by the Court as to Exhibit A, Class #2 should also be certified.  Merely because Plaintiffs did not receive the exact same form should not foreclose certification as to Class #2.  *See, e.g., Pitre v. Wal-Mart Stores, Inc.*, 2019 WL 365897, at *5 (C.D. Cal. Jan. 17, 2019).

Over the years numerous classes have been certified in cases in which common documents or forms have been provided to class members, or when a defendant's purportedly uniform policies and procedures impacted class members in the same way, including in *Vazquez v. Marriott Int'l, Inc.,* No. 8:17-cv-000116, 2018 WL 3860217, at *2 (M.D. Fla. Aug. 7, 2018) (certifying class under Rule 23 as a result of deficient COBRA notice), *Hicks v. Lockheed Martin Corp.,* 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019)(Doc. 41)(certifying class of 54,000 individuals in deficient COBRA class action under Rule 23 for settlement purposes), *Carnegie v. FirstFleet, Inc.,*

(M.D. Fla. June 21, 2019)(Doc. 63)(certifying class of 2,000+ individuals in deficient COBRA class action under Rule 23 for settlement purposes), and *Valdivieso v. Cushman & Wakefield, Inc.* 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 9, 2018) (same).

An award of damages to one putative class member for a violation of COBRA justifies the award of damages to the remaining class members under the same legal theory, subject to the same defenses.  Even if the award of damages were to vary among class members, the Eleventh Circuit has held that the presence of individualized damages does not prevent a finding of commonality. *See Allapattah Serv., Inc. v. Exxon Corp*., 333 F. 3d 1248, 1261 (11th Cir. 2003).  While it is true that the award of damages may vary among class members based on the date of their termination, the *per diem* statutory penalty to be decided by the court should probably be the same for all class members.  The Defendant's conduct towards the proposed class is uniform. In the present case, differences in individual damages will be minimal.  Most of the plaintiffs will be entitled to recover the same damages, based on the same evidence.  The only difference will be the calculations, based on the number of days, which is a mechanical calculation. *Mills v. Foremost Ins. Co*., 511 F.3d 1300, 1310 (11th Cir. 2008).

If there is any reason to differentiate among class members, that can best be decided in connection with the presentation of all facts in a single trial.  The fact that individual issues remain "after the common questions of the defendants liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chem. Corp*., 855 F.2d. 1188, 1197(6th Cir. 1988).  Courts in this circuit have often held that the commonality threshold is met when a defendant has "engaged in a standardized course of conduct that affects all class members." *In re Terazoin Hydrochloride*, 220 F.R.D. 672, 686-87 (S.D. Fla. 2004).  Such is the case here, making this case well suited for class treatment.

Finally, Defendant may argue that application of different statutes of limitation may somehow defeat commonality or class certification generally as to Class #2 (such an argument cannot be raised to Class #1 because it is limited to one year).  But, if raised as to Class #2, this argument fails.  The applicable statute of limitations is four years.  *Blaikie v. Rsight, Inc*., No. 8:09-CV-1770-T-26MAP, 2011 WL 5834751, at *7 (M.D. Fla. Nov. 21, 2011).   Furthermore, even if raised, such an affirmative defense would not defeat certification here because "courts consistently hold…that the statute of limitations does not bar class certification, even when individual issues are certain to exist."  *In re Checking Account Overdraft Litig*., 307 F.R.D. 656, 680 (S.D. Fla. 2015) (*citing to La Grasta v. First Union Sec., Inc.*, 2005 WL 1875469, *5–6 (M.D. Fla. 2005).

> **3.**     **The Claims Presented by the Class Representative Are Typical.**

Typicality is satisfied because all of claims stem from Defendant's failure to provide compliant COBRA notices that comply with 29 C.F.R. § 2590.606-4(b)(4)(i) and 29 U.S.C. § 1166.  This is a common course of conduct based upon the same legal theory and, thus, it satisfies typicality.

Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."  *Rosario-Guerro*, 265 F.R.D. at 627 (*citing Busby v. JRHBW Realty, Inc*., 513 F. 3d 1314, 1322 (11th Cir. 2008).  Factual variations "will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class."  *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984).  Nor will variations in the amount of damages vitiate typicality. *Id.*

In this case, the legal theory underlying the claims of the putative class members is identical to the Lead Plaintiff's claims, as well as to those of the proposed Named Plaintiffs.  Basically, Plaintiffs posit they did not receive a compliant COBRA notice.  This happened to each of the

class members they seek to represent.  Thus, the claims at issue stem from the same conduct. Accordingly, Rule 23(a)(3) is also satisfied. *See, e.g., Pierce*, 2006 WL 6667384, at *4 (typicality met where "[a]ll of the class claims stem from Defendants' alleged failure to provide COBRA notices pursuant to the dictates of 29 U.S.C. § 1166, a common course of conduct, and are based upon the same legal theory.")

Defendant may argue that Lead Plaintiff's and the proposed Named Plaintiffs' individualized lack of understanding of its COBRA Notice somehow defeats typicality. However, whether a COBRA Notice provides adequate information is not based on an individual's understanding of the notice but, rather, an objective determination of whether the mailer complies with the letter of the statute. *Rodriguez v. Int'l Coll. of Bus. And Tech.*, 364 F.Supp.2d 40, 46 (D.P.R. 2005).

Finally, individual variations among class members' claims with respect to the extent of their damages do not defeat typicality for purposes of class certification. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("Differences in the amount of damages between the class representative and other class members does not affect typicality.").  Simply put, there is a sufficient nexus between the claims of the Lead Plaintiff, Jamie Bryant, as well as those of the proposed Named Plaintiffs, with those of the classes as a whole such that typicality is satisfied.

### 4.     The Class Representative Will Fairly and Adequately Protect and <u>Represent the Interests of the Class</u>.

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the Class. Fed. R. Civ. P. 23(a)(4).  The adequacy of representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the

representatives will adequately prosecute the action.  *Rosario-Guerro*, 265 F.R.D. at 628; *Valley Drug Co. v. Geneva Pharms., Inc*., 350 F. 3d 1181, 1189 (11th Cir. 2003).  The central component of representative adequacy is the absence of conflicts of interest between the named representative and the class. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

The Lead Plaintiff, Jamie Bryant, can and will fairly represent the interests of the Classes and has no conflicts with or antagonistic to either class. (Bryant Declaration, ¶¶3-7); *see also Las Vegas Sands*, 244 F. 3d at 1162 (certifying a class noting "an absence of antagonism"); *see also Payne v. Travenol Laboratories, Inc.*, 673 F. 2d 798, 810 (5th Cir), *cert denied*, 459 U.S. 1038 (1982).  Ms. Bryant – like all Class Members – was harmed by Defendant's deficient COBRA notice.  As indicated by her attached Declaration and her deposition transcript, Ms. Bryant has fully participated in this litigation, responded to discovery, been deposed, and will continue to prosecute this action.  No evidence exists suggesting she has any sort of conflict with or is somehow antagonistic to either class, thereby satisfying the adequacy element.  The same is true for the proposed Named Plaintiffs, as indicated in their attached sworn Declarations.  (*See* attached Declarations of Smith, Baker, and Penedianco, ¶¶ 8-14).

A secondary component of representative adequacy is whether the proposed class representative is properly qualified to assume the role of class representative, or, stated differently, whether the proposed representative has the proper "motivation" or "desire" to "vigorously pursue" the interests of absent class members. *See Teggerdine v. Speedway*, No. 8:16-CV-03280, slip op. at *5 (M.D. Fla. May 31, 2018) (*citing Piazza v. Ebsco Indus., Inc*., 273 F.3d 1341, 1346 (11th Cir. 2001)). Frequent considerations in this regard include the proposed representative's knowledge of the case, interest in and enthusiasm for the litigation and for representing the class, a willingness to respond to interrogatories and depositions, and his understanding of the role and

duties of a class representative. *Id*. Thus far, Lead Plaintiff Jamie Bryant has dutifully prosecuted this action with qualified and competent counsel, and the same is true for the proposed Named Plaintiffs. Nothing suggests otherwise.

Lastly, Plaintiffs retained the undersigned counsel who possess the requisite experience litigating class actions, including employee rights' claims in Federal court. For example, on August 7, 2018, the undersigned was appointed as class counsel in *Vazquez v. Marriott International, Inc.,* M.D. Fla. Case No.: 8:17-cv-00116-MSS-SPF, a case which was certified under Fed.R.Civ.P. 23, and now involves over 19,000 individuals, and *Hicks v. Lockheed Martin Corp.,* 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019)(Doc. 41)(certifying class of 54,000 individuals in deficient COBRA class action under Rule 23 for settlement purposes), *Carnegie v. FirstFleet, Inc.*, (M.D. Fla. June 21, 2019)(Doc. 63)(certifying class of 2,000+ individuals in deficient COBRA class action under Rule 23 for settlement purposes), and *Valdivieso v. Cushman & Wakefield, Inc.* 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 9, 2018). Finally, the undersigned's credentials are also included in the attached Declarations detailing their extensive class action experience. Thus, Plaintiffs have satisfied the adequacy component.

**E.** **Plaintiffs Satisfied Rule 23(b)(3).**

Once the requirements of Rule 23(a) have been met, Plaintiffs must then satisfy at least one of the alternative requirements of Rule 23(b) in order for the proposed class to be certified. *Valley Drug Co.*, *supra*. Plaintiff relies on Rule 23(b)(3) asserting that common questions of law or fact predominate and that the class action is superior to other methods of proceeding in the case.

**1.** **Common Issues Predominate.**

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions

. . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (*internal citations omitted*). Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from degenerating into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

Here, common questions of law and fact predominate. The class members' legal theories rest upon uniform federal law – ERISA section 29 U.S.C. § 1166, enforceable pursuant to § 1132. The central issues revolve around a standardized COBRA notice that was common to all class members, whether its contents complied with COBRA's continuation coverage notice requirements, and whether Defendant should be required to pay statutory penalties for providing a deficient notice.

In other similar cases involving COBRA notices courts have found that common issues predominated. *See, e.g., Slipchenko v. Brunel Energy, Inc.*, 2013 WL 4677918, at *13 (S.D. Tex. Aug. 30, 2013); *Pierce*, 2006 WL 6667384, at *5. A few minor differences between Lead Plaintiff Jamie Bryant (and/or as to the proposed Named Plaintiffs) and the other putative class members does nothing to interfere with the fact that in this case the common questions identified above unquestionably predominate over any individualized issues, making class treatment appropriate.

Defendant may argue that individualized damages suggests commonality cannot be satisfied. But, as the court explained in *Vazquez*, "[t]he resolution of whether the COBRA Notice complied with the law, however, does not break into individualized inquiries; rather, it is an objective determination and central to the resolution of any claims of any purported class members. Thus, the question of individual class members' motivations is irrelevant as to Defendant's liability

for the allegedly inadequate COBRA notice." *Vazquez v. Marriott Int'l, Inc.,* No. 817-C-00116-MSS-MAP, 2018 WL 3860217, at *6 (M.D. Fla. Aug. 7, 2018).

      2.    <u>**A Class Action is Superior to Adjudicate This Claim**</u>.

"The second prong of Rule 23(b)(3) requires a court to determine whether 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.' " *Sacred Hearth Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183 (11th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)). Here the superiority requirement of Rule 23(b)(3) is easily satisfied. There is little individual interest in individual control over this lawsuit. To the undersigned's knowledge, members of the respective Classes have not filed individual lawsuits against the Defendant. Moreover, the manageability of handling thousands of COBRA claims against Defendant would be facilitated by the class action vehicle. The alternative of having thousands of individual claims for damages arising out of the exact same conduct of Defendant offers neither efficiency nor fairness to Defendant or the putative class members.

      ***WHEREFORE,*** Lead Plaintiff Jamie Bryant, and proposed Named Plaintiffs Dawn Smith, Curtis Baker, and Earnest Penedianco request that the Court certify the proposed Classes; appoint named Lead Plaintiff Jamie Bryant and proposed Named Plaintiffs Dawn Smith, Curtis Baker, and Earnest Penedianco as Class Representatives; appoint undersigned counsel, Luis A. Cabassa and Brandon J. Hill of Wenzel Fenton Cabassa, P.A., as class counsel; and allow them to notify the Class members.

## Certificate of Compliance with Local Rule 7.1

Pursuant to Local Rule 7.1 of the District Court for the Southern District of Florida, counsel for Lead Plaintiff Jamie Bryant, and proposed Intervening Named Plaintiffs Dawn Smith, Curtis Baker, and Earnest Penedianco conferred with counsel for Defendant, who <u>opposes</u> the relief sought in this Motion.

DATED this 27th day of December, 2019.

Respectfully submitted,

_____
**BRANDON J. HILL**
Florida Bar Number: 37061
**LUIS A. CABASSA, P.A.**
Florida Bar Number: 0053643
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: jcornell@wfclaw.com
Email: lcabassa@wfclaw.com
Email: gnichols@wfclaw.com
**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 27th day of December, 2019, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system.

_____
**BRANDON J. HILL**

21