**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**JAMIE BRYANT, DAWN SMITH,**
**CURTIS BAKER, and EARNEST**
**PENEDIANCO, on behalf of all others**
**similarly situated,[1]**

       **Plaintiff,**

**v.**                    **CASE No.:  16-24818**

**WAL-MART STORES, INC.,**
**ADMINISTRATIVE COMMITTEE OF THE**
**WALMART STORES, INC. ASSOCIATES'**
**HEALTH AND WELFARE PLAN,**

       **Defendants.**
_____/

**<u>SECOND AMENDED CLASS ACTION COMPLAINT</u>**

1.	The Named Plaintiffs are former employees of Defendant Wal-Mart Stores, Inc. ("the Corporate Defendant"), which provides its employees benefits through the Walmart Stores, Inc. Associates' Health and Welfare Plan (the "Plan").

2.	The Plan is a self-funded employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 and administered by Defendant Administrative Committee of the Wal-Mart Stores, Inc. Associates Health and Welfare Plan ("the Plan Defendant").

3.	The Corporate Defendant and the Plan Defendant are hereinafter collectively referred to as "Defendants."

---

[1] Plaintiffs are filing the original version of the Second Amended Complaint to ensure compliance with Doc. 144, and the Court's Clerk's instructions requiring Plaintiffs to re-file the amended pleading pursuant to Local Rule 15.1. However, Earnest Penedianco remains withdrawn as a Named Plaintiff as noted in the Court's Order at Doc. 144, fn. 1.

4.      Plaintiffs sue Defendants for violating ERISA, as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").

5.      Defendants violated ERISA, as amended by COBRA, by failing to provide the Named Plaintiffs with a COBRA notice that complies with the law.  Specifically, Defendants' COBRA notice failed to identify the Plan Administrator, nor did it bother providing any of its required contact information.   As this Court explained when denying the Corporate Defendant's Motion to Dismiss, "section 2590.606-4(b)(4)(i) requires the identification of the plan administrator."  (Doc. 64, p. 9).

6.      And, "without the plan administrator's name, address, and telephone number, this Court finds that Defendant's notice is not sufficient to permit the discharged employee to make an informed decision whether to elect coverage."  (Doc. 64, p. 11).

7.      Defendants repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by COBRA, of their right to continue their health coverage upon the occurrence of a "qualifying event" as defined by the statute.

8.      As a result of these violations, which threaten Class Members' ability to maintain their health coverage, Plaintiffs seek statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

9.      Because the Corporate Defendant claims it was an improper defendant to the original and First Amended Complaint, Plaintiffs file this Second Amended Complaint adding as a defendant the Plan Defendant, and also adding three additional Named Plaintiffs, Dawn Smith, Curtis Baker, and Earnesto Penedianco.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e) and (f), and also pursuant to 28 U.S.C. §§ 1331 and 1355.

11.     Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2).

## THE NAMED PLAINTIFFS

12.     Plaintiffs are Florida residents and former employees of the Corporate Defendant.  Each were Plan participants and received their health insurance through the Plan.

13.     Named Plaintiff Jamie Bryant worked for Walmart for almost seven years, from December of 2009 until April 8, 2016.  She last worked at Walmart Store #2907 located in Miami Gardens, Florida, as the store manager.  Both she and her two young children were participants in the Walmart health Plan.  Bryant experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2), rendering she and her children qualified beneficiaries of the Plan pursuant to 29 U.S.C. § 1167(3).

14.     Named Plaintiff Dawn Smith worked as a cashier for Walmart in Palm Harbor, Florida, from approximately August 1, 2014 through September 5, 2016.  She was a participant in the Walmart health Plan.  During the months preceding the end of her employment Smith became very ill and, ultimately, her employment ended because of absences related to her health problems.  Thus, Smith experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2), rendering him a qualified beneficiary of the Plan pursuant to 29 U.S.C. § 1167(3).

15.     Named Plaintiff Curtis Baker worked as a cashier for Walmart in Tampa, Florida, from approximately December 12, 2008 through June 13, 2016.  He was a participant in the Walmart health Plan.  Baker was terminated for reasons unrelated to gross misconduct

and, thus, experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2), rendering him a qualified beneficiary of the Plan pursuant to 29 U.S.C. § 1167(3).

16.     Named Plaintiff Earnest Penedianco worked as a crew member for Walmart in Osprey, Florida, from approximately May of 2015 through June of, 2016.  He was a participant in the Walmart health Plan.  Penedianco was terminated for reasons unrelated to gross misconduct and, thus, experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2), rendering him a qualified beneficiary of the Plan pursuant to 29 U.S.C. § 1167(3).

## THE WALMART DEFENDANTS

17.     The Corporate Defendant Walmart is a foreign corporation with its headquarters in Arkansas, and employed more than 20 employees who were members of the Plan in each year from 2011 to 2016.

18.     The Corporate Defendant is the Plan sponsor within the meaning of 29 U.S.C. §1002(16)(B).   The Plan provides medical benefits to employees and their beneficiaries, and is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and a group health plan within the meaning of 29 U.S.C. § 1167(1).

19.     The Plan Defendant, "Wal-Mart Stores, Inc. Associates' Health and Welfare Plan Defendant," is the Plan Administrator with the meaning of ERISA 3(16)(A)(i), 29 U.S.C. 1002(16)(A)(i).

## FACTUAL ALLEGATIONS

### COBRA Notice Requirements

20.     The COBRA amendments to ERISA include certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

21.     Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161.

22.     COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4). This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor. 29 U.S.C. § 1166(a).

23.     The relevant regulations prescribed by the Secretary of Labor concerning notice of continuation of coverage rights are set forth in 29 C.F.R. § 2590.606-4 and the Appendix thereto.

24.     Section 2590.606-4(b)(1), states:

> Except as provided in paragraph (b)(2) or (3) of this section, upon receipt of a notice of qualifying event …, the administrator shall furnish to each qualified beneficiary, not later than 14 days after receipt of the notice of qualifying event, a notice meeting the requirements of paragraph (b)(4) of this section.

25.     Section 2590.606-4(b)(4), in turn, provides as follows:

> (4)  The notice required by this paragraph (b) shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:
>
> > (i) The name of the plan under which continuation coverage is available; and the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits;
>
> > (ii) Identification of the qualifying event;

725fb18e7c904431

(iii)  Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event, and the date on which coverage under the plan will terminate (or has terminated) unless continuation coverage is elected;

(iv)  A statement that each individual who is a qualified beneficiary with respect to the qualifying event has an independent right to elect continuation coverage, that a covered employee or a qualified beneficiary who is the spouse of the covered employee (or was the spouse of the covered employee on the day before the qualifying event occurred) may elect continuation coverage on behalf of all other qualified beneficiaries with respect to the qualifying event, and that a parent or legal guardian may elect continuation coverage on behalf of a minor child;

(v)  An explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made;

(vi)  An explanation of the consequences of failing to elect or waiving continuation coverage, including an explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act, with a reference to where a qualified beneficiary may obtain additional information about such rights; and a description of the plan's procedures for revoking a waiver of the right to continuation coverage before the date by which the election must be made;

(vii)  A description of the continuation coverage that will be made available under the plan, if elected, including the date on which such coverage will commence, either by providing a description of the coverage or by reference to the plan's summary plan description;

(viii) An explanation of the maximum period for which continuation coverage will be available under the plan, if elected; an explanation of the continuation coverage termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

(ix) A description of the circumstances (if any) under which the

maximum period of continuation coverage may be extended due either to the occurrence of a second qualifying event or a determination by the Social Security Administration, under title II or XVI of the Social Security Act (42 U.S.C. 401 et seq. or 1381 et seq.) (SSA), that the qualified beneficiary is disabled, and the length of any such extension;

(x)  In the case of a notice that offers continuation coverage with a maximum duration of less than 36 months, a description of the plan's requirements regarding the responsibility of qualified beneficiaries to provide notice of a second qualifying event and notice of a disability determination under the SSA, along with a description of the plan's procedures for providing such notices, including the times within which such notices must be provided and the consequences of failing to provide such notices. The notice shall also explain the responsibility of qualified beneficiaries to provide notice that a disabled qualified beneficiary has subsequently been determined to no longer be disabled;

(xi) A description of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage;

(xii)  A description of the due dates for payments, the qualified beneficiaries' right to pay on a monthly basis, the grace periods for payment, the address to which payments should be sent, and the consequences of delayed payment and non-payment;

(xiii) An explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries; and

(xiv) A statement that the notice does not fully describe continuation coverage or other rights under the plan, and that more complete information regarding such rights is available in the plan's summary plan description or from the plan administrator.

26.   To facilitate compliance with these notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4. A copy of this Model Notice is attached hereto as Exhibit A. The DOL website states that the

DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

27.     In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1). In addition, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).

### The Walmart Notice Is Inadequate and Fails to Comply with COBRA

28.     Defendants only partially adhered to the Model Notice provided by the Secretary of Labor, but only to the extent that served Defendants' best interests, as critical parts are omitted or altered in violation of 29 C.F.R. § 2590.606-4. A copy of Defendants' COBRA notice is attached hereto as Exhibit B.

29.     Specifically, it violates 29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to provide the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits.

30.     Nowhere in the notice provided to Plaintiffs is the Plan Administrator identified.

31.     Furthermore, the notice violates 29 C.F.R. § 2590.606-4(b)(4) because it fails to provide a notice of continuation coverage written in a manner calculated to be understood by the average plan participant.

32.    Without identifying the Plan Administrator a COBRA notice of continuation coverage, like the Walmart notice here, cannot be considered written in a manner calculated to be understood by the average plan participant.

### Plaintiffs Experience a Qualifying Event

33.    As set forth above, Named Plaintiff Jamie Bryant worked for Walmart for almost seven years, from December of 2009 until April 8, 2016.  She last worked at Walmart Store #2907 located in Miami Gardens, Florida, as the store manager.

34.    Both she and her two young children were participants in the Walmart health Plan.  Bryant experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2), rendering she and her children qualified beneficiaries of the Plan pursuant to 29 U.S.C. § 1167(3).

35.    Similarly, Named Plaintiff Dawn Smith worked as a cashier for Walmart in Palm Harbor, Florida, from approximately August 1, 2014 through September 5, 2016.  She was a participant in the Walmart health Plan.

36.    During the months preceding the end of her employment Smith became very ill and, ultimately, her employment ended because of absences related to her health problems.

37.    Thus, Smith experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2), rendering him a qualified beneficiary of the Plan pursuant to 29 U.S.C. § 1167(3).

38.    Likewise, Named Plaintiff Curtis Baker worked as a cashier for Walmart in Tampa, Florida, from approximately December 12, 2008 through June 13, 2016.  He was a participant in the Walmart health Plan.

39.     Baker was terminated for reasons unrelated to gross misconduct and, thus, experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2), rendering him a qualified beneficiary of the Plan pursuant to 29 U.S.C. § 1167(3).

40.     Finally, Named Plaintiff Earnest Penedianco worked as a crew member for Walmart in Osprey, Florida, from approximately May of 2015 through June of, 2016.   He was a participant in the Walmart health Plan.

41.     Penedianco was terminated for reasons unrelated to gross misconduct and, thus, experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2), rendering him a qualified beneficiary of the Plan pursuant to 29 U.S.C. § 1167(3).

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)(i) – Failure to Identify Plan Administrator*

42.     Plaintiffs were each mailed a copy of Defendants' COBRA notice on or near the date of their respective qualifying events by CONEXIS, Walmart's COBRA administrator.

43.     Plaintiffs were unable -- based on the Notice -- to ascertain the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits.

44.      The Walmart COBRA election notice, which is a plan document, does not identify the party responsible for administering continuation coverage in a manner calculated to be understood by the average plan participant.

45.     Defendants were required to provide "in a manner calculated to be understood by the average plan participant ... the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits." 29 C.F.R. § 2590.606- 4(b)(4)(i).

46.     The Walmart Notice fails to comply with this straightforward requirement.

47.     In fact, the word "Plan Administrator" only appears in tiny, nine-point font on the very last page of the Notice and makes no reference as to whether the Plan Administrator is the Corporate Defendant, or the Plan Defendant, or anyone else for that matter.  Simply put who the Plan Administrator is not identified *at all* in the notice.  Nor is any of its contact information.

48.     The Notice informs Plaintiffs and the putative class members to look to their "Associate Benefits Book" for more information of the plan.  (Exhibit B, ¶ 2)("This notice does not fully describe continuation coverage or other rights under the Plan. More information about continuation coverage and your rights under the Plan is available in your Associate Benefits Book.")

49.     Then, in its Motion to Dismiss the Corporate Defendant claims that Plaintiffs should have been able to figure out who the Plan's Administrator is/was by looking at the "Associates Benefits Book" section on ERISA, by going to the following Internet site:

> The Associate Benefits Book, which is the Plan's ERISA-required Summary Plan Description as well as part of the Plan's governing documents, itself provides seven additional pages of explanation regarding continuation coverage. *See id.* at 10; *see also* 2016 Associate Benefits Book at 107-13, *currently available at* https://us.walmartone.com/en/Health/Associate-Toolkit/2016/Documents /2147511532/Associate-Benefits-Book-2016.aspx.

50.     But the website page cited is no longer active.  There is no information available on it whatsoever.  It is inoperable.  Further, a website (particularly an inoperable website) is not a substitute for a compliant COBRA notice.

51.     When contrasted with the unambiguous procedure set forth in the Model Election Notice, Walmart's notice falls far short of what is required.[2]

---

[2] And while the undersigned recognizes that Defendant may have taken down this website because it was the location for the 2016 handbook, and now that this is no longer 2016 and another website exists with another address, because the site cited by Defendant in its first Motion to Dismiss is not online or accessible it cannot save Defendant from

52.     Further, the return address in the upper left-hand corner on the first page of the Notice merely signifies that the Notice is being sent from CONEXIS. It does nothing to clarify whether "CONEXIS," or "Walmart," or some other entity, much less the Plan Defendant, is responsible for administering continuation of coverage benefits.

53.     To further compound the confusion over which entity is responsible for administering the plan, the Notice informs employees to contact *either* CONEXIS or the Walmart Benefits Customer Service at 1-800-421-1362. (*See* Exhibit B, p. 2). This, too, is confusing.

### *The Notice violates 29 C.F.R. § 2590.606-4(b)(4)*

54.     Besides failing to identify the party responsible under the plan for the administration of continuation coverage benefits, Walmart's Notice violates 29 C.F.R. § 2590.606-4(b)(4) because Defendants failed to provide a notice of continuation coverage written in a manner calculated to be understood by the average plan participant.

55.     The notice provided to Plaintiffs is confusing, ambiguous and critical components, if included, are piecemealed throughout the notice rather than being made clear and understandable to the average plan participant.

56.     Additionally, before her termination Plaintiff Jamie Bryant remembered hearing that Walmart's plan permitted "domestic partners" to be covered by Walmart's health insurance plan. And because she was living with a current Walmart employee at the time, she attempted to and finally did contact Walmart with questions about health insurance for her children, and herself, but not before she had already lost coverage. But this was no simple task. It took Plaintiff Jamie Bryant weeks of calling Walmart before she was finally able to figure out how to become covered under her "significant others'" Walmart insurance and, during this entire period, both she and her two young children went

liability here.

without medical insurance. Importantly, CONEXIS had nothing to do with Plaintiff obtaining her new coverage.

57.     An admitted "plan sponsor" such as the Corporate Defendant here, must be considered the "administrator" in cases where the plan documents fail to designate a party as the administrator. ERISA § 3(16)(a)(ii), 29 U.S.C. § 1002(16)(a)(ii). That is precisely the situation we are dealing here. Because the Corporate Defendant is the plan sponsor, and because the plan documents, meaning the COBRA notice, fail to designate a party as the administrator, ERISA § 3(16)(a)(ii), 29 U.S.C. § 1002(16)(a)(ii), the Corporate Defendant must be considered the Plan Administrator.

58.     But in responding to discovery in this lawsuit the Corporate Defendant posits "[t]here are no participants or beneficiaries in the Walmart Associates' Health and Welfare Plan (the "Plan") who were sent a COBRA election notice by Walmart and who did not elect continuation coverage, as Walmart does not send COBRA notices. With respect to which participants or beneficiaries who received a notice from CONEXIS did not elect continuation coverage, **the information requested is within the possession, custody, or control of the Plan and its administrator**, not of Walmart." In other words, the Corporate Defendant claims it sent no COBRA notices to anyone and the requested information on who did was not in its possession.

59.     Defendants are wrong. ERISA-governed plans often have two types of "administrators." *See* Corporate Counsel's Guide to ERISA § 4:6 (2014). The first type—a claims administrator—is the entity that "administers claims for employee welfare benefit plans and has authority to grant or deny claims." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438

(6th Cir. 2006); *see also* Corporate Counsel's Guide to ERISA § 4:6 ("[A] claims administrator is the party responsible for claims review and approval under the given benefit plan.").

60.     The second type—a plan administrator—is usually the "employer who adopted the benefit plan in question." Corporate Counsel's Guide to ERISA § 4:6. "The phrase 'plan administrator' should not be confused with the term 'claims administrator.' . . . [T]h[e] role [of claims administrator] usually does not confer on that party the status of plan administrator." *Id*. Quite often, indeed, the claims administrator and the plan administrator are not the same. *See, e.g., Moore*, 458 F.3d at 424–25, 438 (distinguishing between the employer/plan administrator and the insurance company/claims administrator); *see also Fendler v. CNA Grp. Life Assurance Co*., 247 F. App'x 754, 755, 758–59 (6th Cir. 2007).

61.     Simply put, Walmart's Notice was not "written in a manner calculated to be understood by the average plan participant," as to who or which entity is the "Plan Administrator," and certainly did not allow the average plan/participant (or anyone for that matter) to distinguish between the employer/plan administrator and the insurance company/claims administrator.  Rather, as required by ERISA § 3(16)(a)(ii), 29 U.S.C. § 1002(16)(a)(ii), because the Corporate Defendant is the plan sponsor, and because the plan document -- meaning the notice -- fails to designate a party as the administrator, the Corporate Defendant must be considered the Plan Administrator.

62.     Additionally,  as set forth above, under the non-COBRA notice plan documents, specifically page 238 of its nearly 260 page employee Handbook, Defendant "Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan" is named the Plan Administrator.  Neither the Corporate Defendant nor the Plan Defendant should be permitted to avoid liability in this lawsuit by shifting the blame to each other.

*Plaintiffs' First Concrete Injury: Informational Injury*

63.     First, in accordance with the Eleventh Circuit's recent decision in *Church v. Accretive Health, Inc*., 2016 U.S. App. LEXIS 12414, *1 (11th Cir. July 6, 2016), Plaintiffs suffered a concrete informational injury because Defendant failed to provide Plaintiff and the putative class members with information to which they were entitled to by statute, namely an ERISA-compliant COBRA notice.  Through the FCRA, Congress has created a new right—the right to receive the required Notice as set out in ERISA—and a new injury—not receiving a proper Notice.  The Plaintiffs' "inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549.

64.     Pursuant to ERISA, each of the four Named Plaintiffs were entitled to receive certain information at a specific time after a qualifying event, namely a COBRA notice that complied with ERISA's fourteen requirements.  By depriving each of the four Named Plaintiffs of this information, Defendants injured Plaintiffs and the putative class members they seek to represent. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

*Plaintiffs' Second Injury: Loss of Insurance Coverage*

65.     Each of the Named Plaintiffs suffered a tangible injury in the form of loss of insurance coverage due to Defendant's deficient Notice.  This easily gives Plaintiffs Article III standing.  Besides a paycheck, this is one of the most valuable things employees get in exchange for working for an employer like Walmart.  Insurance coverage has a monetary value, the loss of which is a tangible and economic injury clearly giving rise to Article III standing.

*Named Plaintiff Dawn Smith's Third Injury: Medical Bills*

66.     Additionally, Named Plaintiff Dawn Smith suffered further economic harm as a result of the deficient Walmart COBRA notice in the form of medical expenses and bills that she paid out-of-pocket after she lost her Walmart health insurance because of the deficient Walmart COBRA notice.

## CLASS ACTION ALLEGATIONS

67.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following persons:

> **All participants are beneficiaries in the Defendant's Health Plan who: (1) were sent a COBRA notice by Defendant, in the form attached as Exhibit B, during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant, and (2) did not elect continuation coverage.**

68.     Because no administrative remedies are required, Plaintiff has sought none and seeks to move forward with the putative class action.

69.     Numerosity: The Class is so numerous that joinder of all Class members is impracticable. On information and belief, thousands of individuals satisfy the definition of the Class.

70.     Typicality: Plaintiffs' claims are typical of the Class. The COBRA notice  that Defendant sent to Plaintiffs was a form notice that was uniformly provided to all Class members. As such, the COBRA notice that Plaintiffs received was typical of the COBRA notices that other Class Members received, and suffered from the same deficiencies.

71.     Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class members, they have no interests antagonistic to the class, and have retained counsel experienced in complex class action litigation.

72.    <u>Commonality:</u> Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.    Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1);

b.    Whether Defendants' COBRA notice complied with the requirements of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

c.    Whether statutory penalties should be imposed under 29  U.S.C. § 1132(c)(1) for Walmart's failing to comply with COBRA notice requirements, and if so, in what amount;

d.    The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and

e.    Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

73.    Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices and the adequacy of its COBRA notice. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

74.     Plaintiffs intend to send notice to all Class Members to the extent required by Rule 23(c)(2) of the Federal Rules of Civil Procedure.

75.     The names and addresses of the Class Members are available from Walmart's records and, in fact, have already been identified by the COBRA Administrator, Conexis.

### CLASS COUNT I
#### (Against Defendant Walmart Stores, Inc.)
##### *Violation of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4*

76.     Plaintiffs repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

77.     The Plan is a group health plan within the meaning of ERISA.

78.     The Corporate Defendant is the sponsor of the Plan, and was subject to the continuation of coverage and notice requirements of COBRA.

79.     Plaintiffs and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Corporate Defendant was aware that they had experienced such a qualifying event.

80.     On account of such qualifying event, the Corporate Defendant caused to be sent to Plaintiffs and the Class Members a COBRA notice in the form attached hereto as Exhibit B.

81.     The COBRA notice that the Corporate Defendant sent to Plaintiffs and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above.

82.     These violations were material and willful.

83.     The Corporate Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29

C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiffs and other Class Members.

### CLASS COUNT II
**(Against Defendant Administrative Committee**
**of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan)**
*Violation of 29 U.S.C. § 1132(c)(1) and ERISA § 502(c)*

84.    Here, because Defendant the Corporate Defendant contends it somehow has no liability to Plaintiffs, in the alternative Plaintiffs also bring a claim against the Plan Defendant.

85.    Plaintiffs repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

86.    The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

87.    Section 606(a)(4) of ERISA requires the "administrator" of a group health plan to notify a qualified beneficiary who would lose plan coverage of their right to elect COBRA continuation coverage. "Administrator" is defined in ERISA § 3(16)(A)(i), 29 U.S.C. § 1002(16)(A)(i), as "the person specifically so designated by the terms of the instrument under which the plan is operated." There is no Plan Administrator named in the COBRA notice.

88.    However, according to the Corporate Defendant, "[h]ere the Plan's governing documents specifically designated a party other than Wal-Mart as the administrator of the Plan. Ex. 2 at 238. The party so designated was 'The Administrative Committee, Associates' Health and Welfare Plan.' "

89.    Thus, Plaintiffs bring this claim against the Plan Defendant, who, according to the Corporate Defendant, is the proper party to this lawsuit.

90.    The potential penalty that Plaintiffs seek under ERISA § 502(c)(1) for the alleged notice deficiency likewise is imposed upon the "administrator" of a plan.

91.     Under 29 U.S.C. § 1132(c), "Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title, section 1021(f) of this title, or section 1025(a) of this title with respect to a participant or beneficiary

92.     Plaintiffs and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and the Plan Defendant was aware that they had experienced such a qualifying event.

93.     On account of such qualifying event, the Plan Defendant caused to be sent Plaintiffs and the Class Members a COBRA notice in the form attached hereto as Exhibit B.

94.     The COBRA notice that the Plan Defendant sent to Plaintiffs and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth in above.

95.     As a result, Plaintiffs bring a claim under § 502(c) against the Plan Defendant "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan; (B) to obtain other appropriate equitable relief, including to (i) redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

96.     The Plan Defendant violated 29 C.F.R. § 2590.606-4(b)(4)(i) by failing to identify the Plan Administrator, or provide its contact information in the COBRA notice, and by also failing to provide a notice written in a manner calculated to be understood by the average plan participant.

97.     These violations were material and willful.

98.     The Plan Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. §

2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiffs and other Class Members.

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiffs, individually and on behalf of the Class, pray for relief as follows: Designating Plaintiffs' counsel as counsel for the Class;

      a.      Issuing proper notice to the Class at Defendants' expense;

      b.      Declaring that the COBRA notice sent by Defendants to Plaintiffs and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

      c.      Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendants from continuing to use its defective COBRA notice and requiring Defendants to send corrective notices;

      d.      Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant;

      e.      Awarding attorneys' fees, costs and expenses to Plaintiffs' counsel;

      f.      Granting such other and further relief, in law or equity, as this Court deems appropriate;

DATED this 16th day of June, 2019.

Respectfully submitted,

/s/ Brandon J. Hill
**BRANDON J. HILL**
Florida Bar Number: 37061
**LUIS A. CABASSA, P.A.**
Florida Bar Number: 0053643
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Direct: 813-337-7992
Main: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: gnichols@wfclaw.com

**and**

**CHAD A. JUSTICE**
Florida Bar Number: 121559
**JUSTICE FOR JUSTICE LLC**
1205 N Franklin St., Suite 326
Tampa, Florida 33602
Direct No. 813-566-0550
Facsimile: 813-566-0770
E-mail: chad@getjusticeforjustice.com

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16th day of June, 2020, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system.

/s/ Brandon J. Hill
**BRANDON J. HILL**